Filed 8/23/24  P. v. Hawkins CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC HAWKINS,<br><br>    Defendant and Appellant. | B331664<br><br>(Los Angeles County<br> Super. Ct. No. TA128246) |

APPEAL from an order of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Reversed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

In 2015, defendant and appellant Eric Hawkins pleaded no contest to one count of first degree murder, and the trial court sentenced him to 25 years to life. In 2022, Hawkins filed a petition for resentencing under Penal Code section 1172.6,[1] alleging that he could no longer be convicted of murder because of recent changes to the law. The trial court denied the petition, finding that Hawkins had failed to make a prima facie case that he was entitled to relief because the record of conviction (namely, the preliminary hearing transcript) showed that he "was, in fact, the shooter who ended up killing the . . . victim in this case."

Hawkins contends this was error, and we agree. Hawkins pleaded guilty before the People needed to elect what theory or theories of malice they ultimately would pursue. The record of conviction contains evidence that the murder was committed in the course of an attempted robbery by Hawkins and another individual, his codefendant Carl Caldwell. This meant that the People could pursue a theory of express malice (that Hawkins intentionally shot and killed the victim), a felony murder theory (that Hawkins participated in a robbery during which murder was committed), liability under the natural and probable consequences doctrine (that the murder was a natural and probable consequence of the robbery), or argue in the alternative for some or all of these three theories.

---

[1] At the time Hawkins filed his petition, the applicable statute was found at Penal Code section 1170.95. Assembly Bill No. 200 (Reg. Sess. 2021-2022) has since renumbered section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.) For clarity, we refer to the current citation at section 1172.6 throughout the discussion section. Unless otherwise specified, subsequent statutory references are to the Penal Code.

2

Hawkins therefore made a prima facie showing that entitled him to an evidentiary hearing because the information filed against him "allowed [his] prosecution to proceed under a theory of felony murder [and] murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a)(1).) Although the transcript of the preliminary hearing strongly suggests that Hawkins was the actual killer and therefore ineligible for relief, the trial court may not "engage in 'factfinding involving the weighing of evidence or the exercise of discretion' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972) at the prima facie stage. Accordingly, we reverse the trial court's order and remand for an evidentiary hearing. (See § 1172.6, subd. (d)(3).)

## FACTUAL BACKGROUND AND PROCEEDINGS BELOW

### A.    The Murder Charge and Plea

The People charged Hawkins and Caldwell with eight felony counts for their actions in two separate events: a robbery at a recycling center on the morning of March 17, 2012, and an attempted robbery and murder in a shopping center parking lot the following afternoon, March 18, 2012. The only charge relevant to this appeal is the allegation of murder arising from the second incident. The People charged both Hawkins and Caldwell with murder (§ 187, subd. (a)), and alleged that Hawkins personally and intentionally discharged a firearm causing great bodily injury and death (§ 12022.53, subd. (d)) in the commission of the murder. The People also alleged that a felony-murder special circumstance (§ 190.2, subd. (a)(17)) applied because Hawkins and Caldwell committed the murder in the commission of a robbery.

At the preliminary hearing, three witnesses to the murder testified: Armando Justin, Kiwanna Birks, and Rasmi Hijaz, the

3

father of the murder victim, Basel Hijaz. The following account of the events surrounding the shooting is drawn from their testimony at the hearing.

On the afternoon of March 18, 2012, Birks arranged to meet with Rasmi[2] at a Starbucks in Lynwood to sell a necklace. Rasmi and Basel ran a business buying jewelry, and Birks and her friend Justin had sold items to them several times in the past. According to Justin, he and Birks had been hanging out with Hawkins and Caldwell that day in the courtyard of the building where Birks lived. Just before Justin and Birks left, either Hawkins or Caldwell asked where they were going, and Birks told them she was going to sell a necklace.[3] Justin did not have any jewelry to sell, but he accompanied Birks anyway.

Rasmi and Basel had already parked their car in the Starbucks parking lot when Birks and Justin arrived. Birks gave the necklace to Rasmi, who was standing outside the car, and he handed it to Basel, who was sitting in the car, to examine it. At this point, Hawkins and Caldwell approached the group. Hawkins asked Rasmi if he had any marijuana. Rasmi said he did not have any but offered Hawkins cigarettes. Hawkins did not take the cigarettes, and instead pulled out a gun and pointed it at Rasmi. According to Justin, Hawkins demanded that Rasmi give him his money.

Rasmi testified that he pushed Hawkins away, at which point Caldwell pulled out an iron bar and hit Rasmi on the head.

---

[2] We refer to Rasmi and Basel Hijaz by their first names to distinguish them. We intend no disrespect.

[3] Birks testified that she did not remember telling Caldwell and Hawkins where she was going.

Hawkins then hit Rasmi with the butt of his gun, and Rasmi fell to the ground. Rasmi blacked out after the blow, but he saw Hawkins fire the gun at Basel, who fell to the ground. Caldwell started hitting Basel with his fists, so Rasmi stood up, picked up a chair, and threw it at him. Caldwell then ran away, following Hawkins, who had fled after firing the gun. Rasmi tried to speak with Basel, but Basel did not respond. Basel died of a gunshot wound to the back of the head, and Rasmi suffered a broken nose.

Justin's recollection of the altercation differed in some details. He testified that, when Hawkins pulled the gun, Rasmi attempted to choke him rather than push him. At this point, Basel got out of the car, and Caldwell began fighting with him. Justin began trying to flee the moment he saw the gun, and as a result, he heard the gunshot but did not see if it was Hawkins that fired it. Justin agreed, however, that Hawkins was the only person who had a gun at the time.

Birks testified that she remembered few details of the shooting. She saw Hawkins and Caldwell fighting with Rasmi and Basel, and heard a gunshot, but she did not remember seeing anyone with a gun. A police officer testified that he spoke with Birks hours after the shooting, and Birks told him that Hawkins had pointed a handgun at them and told Rasmi to give him all his money. When presented with her previous statements to police, Birks testified that she saw one of the two suspects point a gun at Rasmi's head but did not remember who. Later, the prosecutor asked, "Was [Hawkins] the only person you saw pointing a gun?" and Birks replied, "Yes." The prosecutor continued, "Was he the only person you saw fire a gun?" and Birks answered, "Yes."

Hawkins agreed to a plea bargain in which he pleaded no contest to first degree murder, and in exchange the People agreed

5

to drop the remaining charges, as well as the firearm and special circumstance allegations.  At the plea hearing, Hawkins did not stipulate to a factual basis to the charge, and the trial court sentenced him to 25 years to life pursuant to the agreement.

## B.    The Section 1172.6 Petition

At the time of Hawkins's prosecution, then-section 189 set forth a felony-murder rule that "[a]ll murder . . . which is committed in the perpetration of, or the attempt to perpetrate . . . robbery . . . is murder of the first degree."  (Former § 189.)  The natural and probable consequences doctrine then provided that "[a]n aider and abettor [was] guilty not only of the intended, or target, crime but also of any other crime a principal in the target crime actually commits (the nontarget crime) that is a natural and probable consequence of the target crime."  (*People v. Smith* (2014) 60 Cal.4th 603, 611.)

In 2018, after Hawkins's guilty plea and sentencing, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which eliminated the natural and probable consequences doctrine as a basis of liability for murder (*People v. Gentile* (2020) 10 Cal.5th 830, 847-848) and restricted the application of the felony-murder rule to require greater proof of the defendant's personal culpability for the killing.  (See, e.g., *People v. Strong* (2022) 13 Cal.5th 698, 707-708.)  Under the new law, "[a] participant in the perpetration or attempted perpetration of a felony listed in [section 189,] subdivision (a) in which a death occurs," with robbery still being one of the listed felonies, "is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited,

6

requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e).).  The legislation also enacted section 1172.6, which provides a mechanism for defendants previously convicted of murder, but who could not be convicted of murder under the law as amended, to petition for the court to vacate their convictions and resentence them.

Hawkins filed a petition for resentencing on July 14, 2022.  The petition alleged without elaboration that Hawkins "could not presently be convicted of murder . . . because of" the recent changes to the murder statutes.  After appointing counsel and receiving briefing from both sides, the trial court denied the petition on the ground that Hawkins failed to make a prima facie case that he was entitled to relief.  (See § 1172.6, subd. (c).)  The court reasoned that "[t]he only legal theory [under] which . . . Hawkins was prosecuted was that he was the shooter," and that all the testimony at the preliminary hearing confirmed that he was indeed the shooter and thus was ineligible for relief.

## DISCUSSION

Hawkins contends the trial court erred by denying his petition at the prima facie stage on the basis of facts derived from testimony at the preliminary hearing.  We agree.

When a defendant files a facially sufficient petition for resentencing, the trial court must first determine whether he has made a prima facie case for relief.  (§ 1172.6, subd. (c).)  At this stage, the trial court must " ' "take[ ] [the] petitioner's factual allegations as true" ' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971) and may "not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at

7

p. 972.)  The prima facie stage sets a " 'very low' " bar (*ibid.*) for defendants to clear, but it nevertheless serves an important role in "ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step . . . review process" without requiring an evidentiary hearing.  (*Id.* at p. 971.)

A defendant's bare assertion that he meets the criteria of section 1176.2, subdivision (a) does not satisfy the prima facie showing when the record of conviction contradicts that assertion. Our Supreme Court has made clear that " 'if the record, including the court's own documents, "contain[ ] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner" ' " and denying the petition at the prima facie stage.  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)  In another case, the court independently reviewed the record and affirmed the denial of a petition at the prima facie stage because "the record . . . makes clear that [the defendant] was the actual killer and the only participant in the killing." (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233.)

In cases where the defendant was convicted after a trial, the record of conviction typically shows the grounds on which the defendant was prosecuted, allowing courts to weed out meritless cases at the prima facie stage.  If, for example, the jury was not instructed on a theory of murder affected by Senate Bill 1437 (see *People v. Harden* (2022) 81 Cal.App.5th 45, 52), or if the verdict form shows that the jury convicted the defendant on a still-valid theory (see *People v. Strong*, *supra*, 13 Cal.5th at p. 715), the trial court may correctly find that the defendant has failed to make a prima facie case for relief.  When a defendant pleads guilty or no contest, however, he typically does not admit to a specific theory

8

of guilt (see *People v. French* (2008) 43 Cal.4th 36, 52), and often, as here, does not stipulate to a factual basis for his plea.

Given these issues, courts have disagreed on how to evaluate a petition at the prima facie stage when the defendant pleaded guilty. Some Courts of Appeal have held that a trial court may deny a petition at the prima facie stage when the record of conviction shows the defendant acted alone and the case did not allow for prosecution on any imputed malice theory, demonstrating that the defendant was ineligible for relief. (E.g., *People v. Mares* (2024) 99 Cal.App.5th 1158, 1161, review granted May 1, 2024, S284232; *People v. Patton* (2023) 89 Cal.App.5th 649, review granted June 28, 2023, S279670.) Other courts have held that even this minimal amount of scrutiny runs afoul of the bar on factfinding at the prima facie stage. (E.g., *People v. Williams* (2024) 103 Cal.App.5th 375; *People v. Davenport* (2021) 71 Cal.App.5th 476.)

We addressed this question in *People v. Pickett* (2023) 93 Cal.App.5th 982, review granted October 11, 2023, S281643. In that case, the trial court denied the defendant's petition for resentencing on the basis of testimony at the preliminary hearing indicating that the defendant shot and killed the victim, and that no one else was involved in the crime. (See *id.* at pp. 985-986.) We first observed, "In cases where the conviction resulted from a guilty plea rather than a trial, the record of conviction may include the transcript of the defendant's preliminary hearing testimony when the transcript 'reliably reflect[s] the facts of the offense for which the defendant was convicted.' [Citations.]" (*Id.* at p. 988.) We then noted that the defendant "does not deny that he was the actual killer, nor does he assert that another person fired the shot that killed [the victim] or that he acted without the

9

intent to kill. He merely states the legal conclusion that he could not now be convicted of murder because of changes made to the law of murder under Senate Bill . . . 1437." (*Id.* at p. 989.) In addition, the defendant did not file a reply brief to counter the evidence from the preliminary hearing, or to suggest there could be any interpretation of that evidence in which he could be eligible for relief.

We held that "[u]nder these circumstances, where the defendant alleges no facts concerning the murder to which he pleaded guilty, the People introduce without objection uncontroverted evidence from the preliminary hearing transcript showing that the defendant acted alone in killing the victim, and the defendant does not put forth, by way of briefing or oral argument, any factual or legal theory in support of his petition, the defendant has failed to make a prima facie showing for relief under section 1172.6. [Citations.]" (*People v. Pickett*, *supra*, 93 Cal.App.5th at p. 990.)

Hawkins argues we should reject our reasoning in *Pickett* and adopt *Davenport*'s holding that courts should not consider facts from the preliminary hearing at the prima facie stage unless the defendant stipulated to those facts as a basis for his or her plea. We disagreed with *Davenport*'s reasoning in *Pickett* (see *People v. Pickett*, *supra*, 93 Cal.App.5th at pp. 992-993), and Hawkins does not persuade us to reverse course. Our view remains that *Davenport*'s approach is inconsistent with our Supreme Court's statements in *Lewis* and *Delgadillo* about the prima facie stage screening process.

*People v. Williams*, *supra*, 103 Cal.App.5th 375 has since gone even farther than *Davenport*. In *Williams*, an attempted murder case, the People and defense counsel stipulated that the

preliminary hearing transcript provided a sufficient factual basis for the defendant's plea to attempted murder and second degree robbery, and further stipulated to facts as part of the plea that the defendant intended to kill the victim and personally used a firearm in the commission of the offense. (*Id.* at p. 384.) The *Williams* court held that "neither the preliminary hearing transcript nor defense counsel's stipulation to that transcript providing a factual basis for the plea" can ever "conclusively establish[ ] that [a] petitioner entered a plea to attempted murder under a still-valid theory" because of the prohibition on judicial factfinding at the prima facie stage. (*Id.* at p. 403, fn. omitted.)

In a dissent, Justice Kathleen Meehan observed, "There is no indication the Legislature intended cases resolved by plea to escape meaningful evaluation at the prima facie stage and . . . the California Supreme Court has interpreted [section 1172.6] as . . . permitting the dismissal of obviously meritless petitions. [¶] Courts must take care not to demand too much of the petitioner at the prima facie stage, but they must also not demand so little that the prima facie review is rendered meaningless and direct perpetrator cases with uncontroverted records of conviction move to the next stage based on nothing more than a form petition with the requisite boxes checked. If, under the circumstances in this case, filing a form petition with boxes checked is sufficient to justify an evidentiary hearing, the prima facie review stage is rendered hollow, our high court's express endorsement of limited record review and dismissal of petitions where the record refutes the petition allegations is not given effect, clearly meritless petitions will proceed to an evidentiary hearing, and already swamped trial courts will be needlessly burdened by conducting evidentiary hearings on meritless petitions. This is not a small

11

matter, considering that a significant percentage of cases are resolved by plea [citations], and I am unpersuaded that this result was intended by the Legislature or compelled by" Supreme Court precedent. (*People v. Williams*, *supra*, 103 Cal.App.5th at p. 424 (dis. opn. of Meehan, J.).) We have nothing to add to the dissent's cogent analysis, with which we agree.

Our rejection of *Williams* and *Davenport* does not mean, however, that we believe a court should weigh the evidence at the prima facie stage. The People argue that the logic of *Mares*, *Pickett*, and *Patton* dictates that we affirm the denial of Hawkins's petition. That misunderstands what *Mares*, *Pickett*, and *Patton* hold. In each of those cases, the court did not need to credit the truth of any fact in the preliminary hearing transcript to determine the defendant was ineligible for relief. Instead, the preliminary hearing transcripts did not disclose any potential facts or theory on which the People could proceed other than that the defendant in each of those cases was the actual killer or attempted killer. Nor were the defendants able to articulate any theory of imputed malice that could have applied to them.

The defendants in *Mares*, *Pickett*, and *Patton* each acted alone with no indication there was any accomplice. In *Mares*, the preliminary hearing transcript "support[ed] no theory other than those where [the defendant] was the actual killer, acting with no accomplice." (*People v. Mares*, *supra*, 99 Cal.App.5th at p. 1167.) In *Pickett*, "[t]here was no evidence suggesting that anyone other than [the defendant] was involved in [the victim]'s death." (*People v. Pickett*, *supra*, 93 Cal.App.5th at p. 986.) In *Patton*, the defendant offered no theory, nor did the record of conviction disclose one, to support his implicit contention that he was not the actual shooter. The preliminary hearing transcript indicated

the defendant acted alone in approaching the victim and shooting him. (*People v. Patton*, *supra*, 89 Cal.App.5th at pp. 652-653.) Also, in each of these cases, the murder or attempted murder did not occur in connection with a felony listed in former section 189. (*People v. Mares*, *supra*, 99 Cal.App.5th at pp. 1161-1162; *People v. Pickett*, *supra*, 93 Cal.App.5th at pp. 985-986; *People v. Patton*, *supra*, 89 Cal.App.5th at pp. 652-653.) These courts accordingly did not need to find or weigh any facts, because there were no facts at all to suggest the prosecution could have proceeded on a now prohibited theory. (E.g., *People v. Mares*, *supra*, 99 Cal.App.5th at p. 1171.)

Here, in contrast, Hawkins did not act alone and the murder was committed in connection with an attempted robbery, a felony that was subject to the felony-murder rule. One witness saw Hawkins shoot the murder victim, another did not, and the third equivocated. The preliminary hearing transcript therefore contained evidence that would have allowed the prosecution to proceed under a theory of imputed malice. Indeed, one would have expected the People to hedge their bets in a two-defendant case such as this by arguing that Hawkins was the actual killer, but that even if the jury was not convinced of that fact beyond a reasonable doubt Hawkins would still be guilty of murder under either the felony-murder rule or the natural and probable consequences doctrine. Even if the People ultimately did not do that for some reason, the record of conviction shows at the time of Hawkins's guilty plea the case against him allowed the possibility for the People to proceed under imputed malice theories. Thus, Hawkins made a prima facie case for relief as the record of conviction did not exclude the possibility that he was or could have been convicted of first degree murder under a now

13

prohibited theory. (See *People v. Mares*, *supra*, 99 Cal.App.5th at p. 1169 [the petitioner's assertion he could not be guilty today because of changes to sections 188 or 189 "*is* sufficient where the record contains a possibility that the defendant could have been found guilty under a now-abrogated" theory].)

The People contend we should affirm because even if Hawkins did not act alone, "The testimony of percipient witnesses shows that [Hawkins] was convicted as the actual killer and not as the result of any now-invalid theory." That would require us, impermissibly, to weigh evidence at the prima facie stage. The testimony at the preliminary hearing strongly suggested Hawkins shot Basel, but as just explained it also permitted the People to prosecute Hawkins for murder under a theory not requiring proof that he was the actual killer.

The Supreme Court explained in *Lewis* that the purpose of the prima facie stage is to "ensur[e] that clearly meritless petitions can be efficiently addressed" without the need of an evidentiary hearing. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.) If that stage is to serve its role in cases involving pleas, it must allow for the denial of a petition in a case where the record shows—without any need to weigh evidence—that the changes in murder law enacted in Senate Bill 1437 do not impact the defendant's conviction. But that does not mean courts can screen out cases where the record of conviction contains facts indicating the prosecution could have proceeded on a now prohibited theory of imputed malice, even if that was not the most likely theory. Here, the preliminary hearing testimony accusing Hawkins of shooting Basel did " 'not establish [his] ineligibility for resentencing as a matter of law' " (*People v. Pickett*, *supra*, 93 Cal.App.5th at p. 993, quoting *People v. Flores*

14

(2022) 76 Cal.App.5th 974, 991), and accordingly, the trial court erred by denying the petition at the prima facie stage.

## DISPOSITION

The trial court's order is reversed. On remand, the trial court shall issue an order to show cause and hold an evidentiary hearing as specified in section 1172.6, subdivision (d)(3).

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.